# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of:

The Cellular Telephone Assigned Call Number 414-550-2053

)
)
)   Case No. 20-918M(NJ)
)
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A.

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment b.

The basis for the search under Fed. R. Crim P. 41(c) is:
- ☒ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of:

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____), is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Daniel Gartland, SA
*Printed Name and Title*

Sworn to before me and signed in my presence:

Date: 4/1/2020

*Judge's signature*

City and State: Milwaukee, Wisconsin

Nancy Joseph, U.S. Magistrate Judge
*Printed Name and Title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Daniel Gartland, being first duly sworn on oath, on information and belief state:

**I.     INTRODUCTION, BACKGROUND, TRAINING, AND EXPERIENCE:**

1.     I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number 414-550-2053 ("the SUBJECT PHONE") that is stored at premises controlled by T-Mobile (d/b/a Metro PCS), a wireless telephone service provider headquartered at 4 Sylvan Way, in Parsippany, New Jersey, 07054.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require T-Mobile to disclose to the government copies of the information further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2.     I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since May 2018. Since October 2018, I have been assigned to the FBI's Milwaukee Area Violent Crimes Task Force. This Task Force is a multi-jurisdictional law enforcement entity charged with investigating violations of federal law, including bank robberies, commercial robberies and other violent crime matters, defined under Title 18 of the United States Code. I have been trained in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. I have assisted in criminal investigations, participating in surveillance, interviews, and debriefs of arrested subjects. As a result of this

training and investigative experience, I have learned how and why violent actors typically conduct various aspects of their criminal activities.

3. Based on the facts set forth in this affidavit, there is probable cause that Shawn Jacoy was involved in the attempted armed bank robbery at Wells Fargo Bank, 6130 West National Avenue, West Allis, Wisconsin on March 3, 2020 in violation of Title 18, United States Code, Sections 2113(a) and (d) and 2 and the armed robbery of Walmart Neighborhood Market, 7025 West Main Street, Milwaukee, Wisconsin on March 3, 2020 in violation of Title 18, United States Code 1951(a) and 2 (Hobbs Act Robbery). There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

4. This affidavit is based upon my training and experience, my personal knowledge and information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. This affidavit is also based upon police reports, surveillance videos, physical surveillance, and witness statements that I consider to be reliable as set forth herein.

5. Because this affidavit is submitted for the limited purpose of a obtaining a search warrant, I have not included each and every fact known to me concerning this investigation.

## II. PROBABLE CAUSE

1. On March 3, 2020, a male subject (Subject #1) attempted an armed robbery of Wells Fargo Bank, a federally insured financial institution located at 6130 West National Avenue, West Allis, Wisconsin. Subject #1 entered the bank at approximately 3:33 p.m. Subject #1 approached the teller counter and passed a note. The note stated Subject #1 had a gun and demanded money from the teller drawer. Subject #1 kept his right hand in his jacket pocket, further implying he had a firearm. The teller ducked below the counter, pressed a hold-up alarm, and

2

alerted other bank employees that they were being robbed. Subject #1 then exited the bank without obtaining any U.S. currency.

2. Subject #1 was described as a white male with a slender build. The subject was wearing a dark baseball hat, dark turtleneck pulled up over his face, dark jacket with the hood up, blue jeans, and grey shoes.

3. On March 3, 2020 a male subject (Subject #2) committed an armed robbery of Walmart Neighborhood Market, 7025 West Main Street, Milwaukee, Wisconsin. Subject #2 entered the store at approximately 4:22 p.m. Subject #2 approached the customer service counter and passed a note. Subject #2 verbally demanded money from the clerk, implied he had a gun and threatened to shoot her. The clerk opened her cash drawer and Subject #2 removed U.S. Currency. Subject #2 fled the store with approximately $5,500 of U.S. currency.

4. Subject #2 was described as a white male with a slender build. The subject was wearing a dark baseball hat, dark mask covering the lower portion of his face, dark jacket with the hood up and blue jeans.

5. Surveillance video from Walmart showed Subject #2 fleeing north and westbound on foot from the parking lot, toward the intersection of West Main Street and South 72nd Street. Investigators obtained surveillance video from a home located in the 500 block of South 72nd Street. In the video, Subject #2 was seen entering the driver side of a white Ford F-350 plow truck with a salt spreader in the truck bed and a logo on the side. A witness identified the logo on the truck as "Winter Services."

6. Investigators determined Winter Services, Inc. only owned one truck that matched the truck used by Subject #2. Shawn M. Jacoy, an employee of Winter Services, Inc., regularly used the truck. Investigator's obtained GPS data for the truck, which was maintained by the

employer, and that information showed the truck in the approximate area of both the aforementioned incidents.

7. Winter Services, Inc. also provided an address of 521 South 75th Street, Milwaukee, WI and telephone number of 414-550-2053 for Shawn M. Jacoy (hereinafter "Jacoy").

8. On March 4, 2020, Jacoy was arrested by the Milwaukee Police Department at the above address. Jacoy consented to a search of the residence. Clothing consistent with that of Subject #1 and Subject #2 were recovered from the residence along with $5,279.00 in United States Currency. An additional $200 in United States Currency was located on Jacoy. During processing at the West Allis Police Department, Jacoy provided telephone number 414-550-2053.

9. In a Mirandized interview that same day, Jacoy confessed to committing both the attempted bank robbery at Wells Fargo and the armed robbery at the Walmart as detailed above.

10. Based on the foregoing, I submit that there is probable cause to believe that the records identified in Attachment B, which correspond to telephone number 414-550-2053, are likely to constitute evidence of the above described incidents on March 3, 2020. According to law enforcement databases, T-Mobile was the Provider for this telephone number during the time period at issue.

11. In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers)

to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

12. Based on my training and experience, I know that T-Mobile can collect cell-site data about the SUBJECT PHONE.  I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

13. Based on my training and experience, I know that wireless providers such as T-Mobile typically collect and retain information about their subscribers in their normal course of business.  This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service.  I also know that wireless providers such as T-Mobile typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business.  In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users.

## AUTHORIZATION REQUEST

14. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

5

Case 2:20-mj-00918-NJ    Filed 04/01/20    Page 6 of 10    Document 1

15. I further request that the Court direct T-Mobile to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on T-Mobile, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

# ATTACHMENT A

## Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number 414-550-2053, ("the Account"), that are stored at premises controlled by T-Mobile ("the Provider"), headquartered at 4 Sylvan Way, in Parsippany, New Jersey, 07054.

7

# ATTACHMENT B

## Particular Things to be Seized

### I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time periods from February 1, 2020 through March 4, 2020:

    a. The following information about the customers or subscribers of the Account:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

   i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

   ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.

**II.     Information to be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. §§ 2113(a) and (d) and (2) and 18 U.S.C. §§ 1951(a) and 2, during the period from February 1, 2020 through March 4, 2020.

9